IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

KENNETH DIXON, #127617                                              PLAINTIFF

VS.                                             CIVIL ACTION NO. 3:07cv379- JCS

STEVE RUSHING, ET AL.                                              DEFENDANTS

MEMORANDUM OPINION AND ORDER

The Court held an omnibus hearing in this matter, at which time it conferred with the plaintiff and counsel for the defendants in this suit founded upon 42 U.S.C. § 1983. At that hearing, the parties consented to have a United States Magistrate Judge conduct any and all further proceedings in the case and order the entry of final judgment, and the District Judge subsequently entered an order of reference. 28 U.S.C. § 636(c), Fed. R. Civ. P. 73. Dixon is proceeding in this matter *in forma pauperis*. 28 U.S.C. § 1915(e). The defendants have filed a Motion for Summary Judgment (document number 62), to which the Plaintiff has responded (document numbers 65 and 67, "Motion to Dismiss Defendants' Motion for Summary Judgment"), and the Defendants have filed a rebuttal. Having considered these filings, the Court finds that the Defendants' Motion for Summary Judgment (document number 62) should be granted, that the Plaintiff's "Motions" (document numbers 65 and 67) should be denied, that this matter should be dismissed with prejudice, and that a separate judgment should be entered in accordance with Federal Rule of Civil Procedure 58.

## I. Plaintiff's Claims

Plaintiff claims that the Defendants denied him adequate medical treatment during his time of incarceration at the Lincoln County Jail, from January 18, 2007, to March 27, 2007. During that time period, he was first housed as a pre-trial detainee, but he subsequently pleaded guilty and was sentenced. He was transferred to state custody on March 27, 2007. In his complaint, he alleges claims against several defendants, as follows: the Sheriff of Lincoln County, Steve Rushing; and two Deputies, Daisy Robinson and Marshall London.

In his complaint, supporting filings, and his testimony from the omnibus hearing, Plaintiff describes two separate series of events in which the Defendants allegedly denied him adequate medical care. He first alleges that the Defendants denied him medical care on January 20, 2007, and the denial continued until he left the facility on March 27, 2007. Secondly, he alleges that the defendants denied him medical care based upon a separate incident that occurred on March 24, 2007. (The Plaintiff did not elaborate on this claim during the Omnibus hearing.) Turning to the first incident, Plaintiff alleges that on January 20, 2007, he hurt his back when he slipped and fell after showering, as he was returning to his "rack." He immediately submitted a medical request , and the nurse subsequently examined him on January 23, 2007. (Document number 63-2 at 18.) Dixon alleges that a day or so later the nurse began giving him "Soma" and "Flexoral," but about two or three days later those medications began to make him sicker. He alleges that the defendants failed to give him other medications for pain. He alleges that a filed grievance forms and eventually talked with Sheriff Rushing, who told the Plaintiff that he would get him an appointment with an orthopedic doctor, but he failed to do so. He admits that he saw a doctor on February 18, 2007, but alleges that the doctor refused to give him the medication that he desired,

Lortab, and subsequently refused to treat him. He alleges that despite his continued requests for medication and medical attention, the Jail refused to provide him with the x-rays, MRIs, and other specialized treatment that he needed for his back. He alleges that Defendant Robinson discarded his requests for medical treatment. He further alleges that the nurse told him that his family would have to pay for the specialized treatment he request. In essence, he alleges that the Defendants failed to have a specialist treat his back injuries.

The second incident in which the Defendants allegedly failed to provide Plaintiff with adequate medical attention occurred on March 24, 2007, when the Plaintiff was allegedly beaten by state inmates. In particular, the Plaintiff alleges that he was hit in the face and ear with a padlock. Plaintiff alleges that the officer on duty put him in lockdown, but failed to obtain medical help for his swollen face. He does not specifically allege that he informed any of the named Defendants of his condition, but he did submit medical requests. Thereafter, on March 27, 2007, he was transferred to state custody, where he received medical attention for these injuries.

Based on these alleged facts, the Plaintiff has brought two separate constitutional claims for denial of adequate medical attention. In his several requests to amend the complaint (see document numbers 58, 74, 76, 77, 79, and 81, all addressed at orders entered at 86 and 88), he has also alleged a claim for delay in medical treatment. The Court granted the request to add the claim for delay in medical treatment and will address it in this opinion. The Plaintiff has most recently filed a motion to amend on September 21, 2009, (document number 89), which the Court denies as it fails to add any claims to the existing complaint. The Motion at document number 89, in essence, disputes the Court's denial of his motion for default judgment in an order entered at document number 88. As explained in the Order at document number 88, the

Defendants timely answered the complaint and filed the Motion for summary judgment, therefore, his motion for default judgment was without merit.

The Court now turns to consider the relevant standard for summary judgment.

## II. The Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56( c). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable fact finder to return a verdict for the nonmoving party.'" Lemoine v. New Horizons Ranch and Center, 1999 WL 246713, *3 (5th Cir. 1999)(quoting Colston v. Barnhart, 146 F.3d 282 (5th Cir.), cert. denied, 119 S.Ct. 618 (1998)). Issues of fact are material if "the resolution of the issues affect the outcome of the suit under governing law." Id. The Court does not, however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(emphasis omitted). Moreover, the non-moving party's burden to come forward with "specific facts showing that there is a genuine issue for trial," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, 37 F.3d at 1075.

The standard for analyzing the Plaintiff's denial of medical care claims is well established. The Fifth Circuit has adopted the same standard for evaluating a jail official's

episodic acts or omissions for both pretrial detainees and convicted prisoners. Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996)(en banc)[1]. The Court is required to employ a standard of subjective deliberate indifference as the measure of culpability for such episodic acts or omissions, which include allegations of inadequate medical treatment. Id.. In other words, "the question is whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge." Id. at 645. Thus, in order to prevail on a constitutional claim for denial of adequate medical care, the Plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care. . . ." Estelle v. Gamble, 429 U.S. 97, 104-105; Mayweather v. Foti, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Nevertheless, the Court is mindful that "a disagreement between an inmate and his physician concerning whether certain medical care was appropriate is actionable under § 1983 only if there were exceptional circumstances." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). Moreover, "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Id. Although he may disagree with the treatment he has received, "an inmate's mere disagreement with the course of medical treatment does not give rise to a constitutional claim." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992).

---

[1] The Court notes that the Plaintiff was both a pretrial detainee and a convicted prisoner during the time when he alleges his constitutional rights were violated.

The Court has previously addressed cases involving the allegation of delay in medical treatment at the summary judgment stage. In Campbell v. McMillin, 83 F.Supp.2d 761 (S.D. Miss. 2000), Hon. William H. Barbour, Jr., District Judge, addressed the need for expert testimony in cases such as the one at bar, explaining, as follows:

> To state a claim for a civil rights violation resulting from delayed medical attention, a plaintiff must demonstrate that the injured party suffered substantial harm resulting from the delay. "In all but the simple and routine cases. . . it is necessary to establish medical causation by expert testimony."

Campbell v. McMillin, 83 F. Supp.2d 761 (S.D. Miss. 2000)(J. Barbour). Campbell was a § 1983 action in which the survivors of an inmate who died of cardiovascular failure after being without prescription medication for two or three days sued the county and various individual custodians, alleging violation of the Eighth Amendment. In Campbell, Judge Barbour granted summary judgment in the Defendants' favor when the Plaintiff failed properly to designate or to present expert testimony in support of his case and, consequently, the court excluded the expert from presenting his testimony.

Having considered the appropriate standards governing the case, the Court will discuss the Plaintiff's claims.

### III. Discussion

#### A. Denial of Medical Attention based upon events following January 20, 2007

In his first claim, the Plaintiff alleges that the Defendants denied him adequate medical attention beginning on January 20, 2007, when he fell, and continuing until March 27, 2007, when he was transferred to state custody at the Central Mississippi Correctional Facility

("CMCF"). With regard to specific claims against the Defendants, Plaintiff alleges that the Defendant Robinson discarded his medical requests. At the omnibus hearing, the Plaintiff alleged that he had sued Rushing because he was the Sheriff and that he had talked to him about his condition. In his complaint, it appears that he has sued London because he escorted the Plaintiff to and from a doctor's visit, and he was not pleased with the result of the evaluation of the doctor. The record submitted by both Plaintiff and the Defendants belies the Plaintiff's contention that he was denied adequate medical treatment. Accordingly, the Defendants are entitled to summary judgment on this claim.

The medical records show that Plaintiff was seen by a nurse as early as January 23, 2007, for his complaints of pain. The Nurse examined the Plaintiff and passed along his requests for Lortab to the doctor. On January 27, 2007, the doctor prescribed a Medrol Dosepack, Naproxen and Flexeril. The record shows that these medications were given to him until the doctor changed the Plaintiff's prescription to Tramadol 50 and Flexeril on January 29, 2007. Defendants' Exhibit E. The Medication log shows that the Plaintiff was given medication three times per day from January 31, 2007, to February 4, 2007, when the Plaintiff began refusing the medications. (Document Number 46 at 5; Document Number 63-2 at 23-25(Medication Refusal Forms).) The Nurse states that she offered the Plaintiff Ibuprofen or Tylenol , but he refused these medications also. (Document number 63-2 at 20.) In a medical request form dated March 21, 2007, the Nurse replied that the she had given him Ibuprofen and Tylenol, but he complained that he didn't think that those medications were enough for him. (Document number 63-2 at 43.) Although a doctor examined and evaluated the Plaintiff on February 18, 2007, the Plaintiff was dissatisfied with the quality of the evaluation. (Document Number 63-2 at 38). In the Nurse's affidavit, she states that at no time did she consider his condition to be serious or that a failure to see a specialist created a

risk to Plaintiff's health or safety. (Document number 63-2 at 20, Affidavit of Nurse Lori A. Doss.) She also stated that neither she nor the doctor believed that Dixon needed to see a specialist for off-site testing. Id.

With regard to Plaintiff's contention that Defendant Robinson threw away his medical requests, once again, the record demonstrates otherwise. There are medical requests in the record from January 22, 23, 25, 26, 27, 29, 31, February 5, 6, 7, 7, 8, 16, 18, and March 21. Even assuming that Defendant Robinson discarded some requests, Plaintiff's requests and conditions were well documented in his medical record, and the medical personnel responded as set forth in the preceding paragraph.

In Sheriff Rushing's affidavit, he states that he relied on the medical staff's opinion regarding treatment. (Document Number 63-2 at 35, Affidavit.) In this case, the medical staff did not recommend specialized treatment, and they informed him that the Plaintiff was receiving all the necessary treatment. Id. The Sheriff states that the medical personnel never informed him that the Plaintiff's condition was "serious," and that he did not think it was serious.[2] The Sheriff met with the Plaintiff on February 16, February 22, and March 23, to discuss the Plaintiff's concerns. (Document Numbers 46 at 16, 63-2 at 41, 63-2 at 42.)

With regard to the Defendant London, there is simply no claim. Plaintiff's complaint clearly states that London escorted him from the doctor's examination at the request of the doctor. Plaintiff makes no other allegations against London.

---

[2] Indeed, within days of the Plaintiff's admission to the Mississippi Department of Corrections at CMCF, the medical personnel described the Plaintiff as "malingering", and prescribed him 800 mg of Ibuprofen, once per day with food for three months. (Document number 63-2 at 54.)

In the opinion of the undersigned, this alleged inadequacy of medical treatment does not amount to a federal claim. Rather, Dixon is simply displeased with the result of the medical personnel. Indeed, it appears that the Plaintiff was prescribed medication for his pain, but it was not the medication that he desired, so he refused it and other over-the-counter medication that the nurse offered him. Moreover, the nurse's affidavit demonstrates that in her medical opinion, he did not need specialized treatment. Although he may disagree with the choice of treatment he received for his medical conditions, "an inmate's mere disagreement with the course of medical treatment does not give rise to a constitutional claim." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992). Although his treatment may not have been the best that money can buy, this course of treatment did not demonstrate deliberate indifference to his medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Further, his disagreement with a nurse's diagnosis and treatment, rather than a doctor's cannot rise to the level of a constitutional claim. See Wesson v. Oglesby, 910 F.2d 278, 283 (5th Cir. 1990). Moreover, prison officials are entitled to rely on qualified medical provider's opinions in determining what medical care is appropriate. Tucker v. Shepard, 2008 WL 341653 (S.D. Miss. Feb. 5, 2008). Finally, mistakes in treatment cannot be the basis for a constitutional claim because allegations of negligence cannot be pursued under 42 U.S.C. section 1983. Neals v. Norwood, 59 F.3d 530, 532 (5th Cir. 1995). Accordingly, the Defendants are entitled to summary judgment on this claim.

### B. Denial of Medical Attention subsequent to March 24, 2007, attack

Plaintiff alleges that the Defendants denied him medical treatment after inmates attacked him on the evening of March 24, 2007. Plaintiff failed to elaborate upon these claims during the Omnibus Hearing. In his complaint, he alleges that an officer, not a defendant in this action,

placed him in lockdown and refused him medical help. He further alleges that the Defendants failed to provide him medical treatment in response to two medical requests that he submitted on on March 25, 2007. (Document number 63-2 at 46-47.) The medical requests state that he was experiencing ringing in and possible bleeding from his right ear, swelling to his right eye and blurred vision. (Id.) Notations by the Nurse on the medical requests state "Leaving today" and are dated March 27, 2007. Plaintiff, furthermore, submitted a grievance dated March 24, 2007, about the incident. (Document number 63-2 at 44.) Sheriff Rushing's notation, undated, states that, using the past tense, the Plaintiff was "Sent to Rankin on 3/27/07." (Id.)

In cases where a prisoner alleges inadequate medical care, the Court employs the Farmer test for the standard of deliberate indifference to serious medical needs. Farmer v. Brennan, 511 U.S. 825 (1994). As stated in Farmer,

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 114 S.Ct at 1979. At this summary judgment stage, the Plaintiff has failed to come forward with any evidence, beyond his subjective belief, that the Defendants were aware of an excessive risk to his health and disregarded it. Although he has submitted the medical request forms as his proof, these forms only show that the Nurse received them on March 27, 2007, the date he was moved. The forms do not show that these Defendants were aware of his condition at that time. Likewise, the grievance, addressed to Sheriff Rushing, contained a notation by Rushing that the Plaintiff had been "Sent to Rankin on 3/27/07," signifying that Sheriff made the notation after the fact, after the Plaintiff had been transferred. Furthermore, the Defendants have presented affidavits stating that they were not even aware of the alleged assault until after the Plaintiff had

been transferred to the custody of the MDOC. (Document Number 63-2 at 34, 39, 48.)

Moreover, it is not clear that these injuries presented an excessive risk to his health or safety. To the contrary, employing the standard for evaluating Eighth Amendment excessive force claims for injuries, these injuries appear to be *de minimis*. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)(sore, bruised ear lasting three days is *de minimis* and does not rise to the level of an Eighth Amendment claim for excessive force); Luong v. Hatt, 979 F.Supp 481 (N.D. Tex. 1997)(Cuts, bruises, abrasions, etc., lasting only two or three days do not rise to the level of a constitutional injury.). Looking to his medical records from MDOC, it appears that he complained that he was denied medical care after the altercation. (Document Number 63-2 at 54.) The treatment notes, however, comment that he was "malingering" regarding the altercation, and only prescribed ibuprofen for treatment. (Id.) Accordingly, because the Plaintiff has failed to come forward with competent evidence to show that the Defendants were aware of an excessive risk to his health and safety, and because the Plaintiff's injuries can be characterized as *de minimis,* the Defendants are entitled to summary judgment on this claim.

### C. Delay in Medical Treatment Claim

Plaintiff alleges that his constitutional rights were violated when the Defendants delayed medical treatment. As Judge Barbour stated in Campbell v. McMillin, "in all but the simple and routine cases . . . it is necessary to establish medical causation by expert testimony." Campbell, 83 F.Supp.2d at 761. Likewise, in the present case, there is no competent evidence of substantial harm; that is, the Plaintiff has failed to put forth any evidence, other than his assessments of his medical condition, to show that he suffered substantial harm as a result of the Defendants' alleged delay in treatment. Moreover, Plaintiff has failed to show in the medical records where

any medical professional has stated that the alleged delay in treatment has caused him harm. To the contrary, unbiased medical personnel at CMCF, upon his entry to the state system on or about March 27, 2007, characterized him as "malingering." (Document Number 63-2 at 54.) Thus, because the Plaintiff has failed to show legal causation, the undersigned finds that the Defendants are entitled to summary judgment on this claim.

## IV. Conclusion

For the reasons stated in this Memorandum Opinion and Order, the Court finds that the Defendants are entitled to Summary Judgment as to all claims of the Plaintiff. Because the undersigned finds that these claims should be dismissed as described above, the issue of qualified immunity is not reached. Accordingly, the Defendants Motion for Summary Judgment (Document number 62) is granted, and the Plaintiff's Motions to Dismiss Defendants' Motion for Summary Judgment (Document numbers 65 and 67) are denied. As stated above, the Plaintiff's Motion to Amend (Document number 89) is denied. Accordingly, this action should be dismissed with prejudice. A separate judgment will be entered in accordance with Fed. R. Civ. P. 58.

SO ORDERED, this the 29th day of September, 2009.

/s/ James C. Sumner_____
UNITED STATES MAGISTRATE JUDGE